

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3528
rweisbein@foley.com EMAIL

CLIENT/MATTER NUMBER
092958-6007

March 28, 2012

<u>**VIA ECF**</u>
<u>**COURTESY COPY VIA FEDEX**</u>

Magistrate Judge Michael A. Hammer
Martin Luther King, Jr. Federal Building &
  U.S. Courthouse
Court Room MLK 3C
50 Walnut Street
Newark, New Jersey 07101

      Re:    *Virtual Studios, Inc. v. Couristan, Inc.*, Case No. 11-cv-00427-JLL-MAH

Dear Magistrate Judge Hammer:

      Pursuant to the Court's order of March 9, 2012, the parties hereby submit this joint letter outlining their respective positions with respect to the sole issue remaining in dispute: whether Plaintiff Virtual Studios, Inc. ("Virtual") may assert a privilege in documents it produced to defendant Couristan, Inc. ("Couristan") without prior attorney review for privilege.

**A.    Couristan's Position: Virtual Cannot Claw-Back Privileged Documents It Produced Without Review**

      It is black letter law that a party that produces privileged documents may not assert a privilege as to those documents unless the production was inadvertent. See <u>Ciba-Geigy Corp. v. Sandoz Ltd.</u>, 916 F. Supp. 404, 411 (D.N.J. 1995) (finding privileged waived where documents were negligently produced). Where a party claims that production was inadvertent and that privilege is not therefore waived, the producing party bears the burden of demonstrating not only that the production was unintentional, but also that "(2) the holder of the privilege or protection took reasonable steps to prevent the disclosure, and (3) the holder promptly took reasonable steps to rectify the error." <u>U.S. v. Sensient Colors, Inc.</u>, Civ. No. 07-1275 (JHR/JS), 2009 WL 2905474, *3 (D.N.J. Sept. 9, 2009) (finding waiver). In this district, those questions are analyzed based on the five factors set forth in the <u>Ciba-Geigy</u> decision: (1) the reasonableness of the precautions in view of the extent of the document production; (2) the

4811-6604-3663.2

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 2 of 10

number of inadvertent disclosures; (3) the extent of the disclosures; (4) delay, and measures taken to rectify the disclosure; and (5) the interests of justice. Amerisham Biosciences Corp. v. PerkinElmer, Inc., Civ. No. 03-4901(JLL), 2007 WL 329290, *3-4 (D.N.J. Jan. 31, 2007) (finding waiver), citing Ciba-Geigy, 916 F.Supp. at 411. Virtual cannot satisfy its burden as to those requirements.

    First, there can be no dispute that Virtual failed to take "reasonable steps" to prevent the disclosure of privileged documents. To the contrary, Virtual's counsel admitted to the Court that it took *no steps* to prevent the production of privileged documents beyond telling its client not to do so, failing to even review the documents for privilege pre-production, or to use keywords to filter out such obviously privileged documents as e-mails between Mr. Sucher and his counsel concerning the possibility of bringing claims of the very type at issue here. Cf. Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 262 (D. Md. 2008) (Grimm, USMJ) (finding defendants had not taken adequate steps to prevent production where they could not demonstrate that the keyword search relied on was reasonable); Bensel v. Air Line Pilots Assoc., 248 F.R.D. 177, 180 (D.N.J. 2008) (finding that it was "incumbent on Plaintiff's counsel" to take steps to prevent disclosure of privileged documents and steps taken were not reasonable where a number of the "inadvertently" disclosed documents "contained the full name of the [plaintiff's counsel's] firm").[1] Rather, Virtual's counsel simply instructed his client – a non-lawyer with no prior document review experience – to review the documents collected by Virtual's discovery vendor and to withhold privileged communications from the production. Virtual's non-lawyer principal predictably failed to do a competent job of privilege review, and, on the prior call with the Court, Virtual's counsel could only weakly suggest that Mr. Sucher "didn't understand" counsel's instructions (a theme Virtual elaborates on in their submission herein) and simply marked the documents "confidential." It is worth noting that the vast majority of Virtual's production was marked "confidential." Thus, the privileged documents were treated no differently from the other production documents. In other words, the "confidential" designation was not intended as a means to segregate privileged communications. In any event, in order to

---

[1] In contrast, the court in Briese Lichttechnik Vertriebs GmbH v. Langton, 272 F.R.D. 369.(S.D.N.Y.2011), relied on by Virtual, expressly noted that the producing party's counsel *had* undertaken a "facially adequate review" for privilege. Id. at 373, n.3. Similarly, the court in Fidelity & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516 (E.D. Pa. 1996), also expressly noted that Fidelity's counsel had undertaken an adequate pre-production review for privilege. Id. at 522, n.8. Even the Berg court relied on the fact that the producing party's attorneys had "identified the documents to be withheld, marked those documents, and someone at counsel's law firm nevertheless copied and produced them." Berg Electronics, Inc. v. Molex, Inc., 875 F. Supp 261, 263 (D. Del. 1995). Virtual has identified no case – and Couristan is aware of none – in which any court, federal or state, has failed to find waiver where, as here, counsel never reviewed the documents prior to production.

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 3 of 10

avoid such "misunderstandings" courts require that *counsel* conduct a pre-production privilege review and engage in keyword filtering to prevent disclosure of attorney-client communications. See U.S. v. Cinergy Corp., No. 1:99CV01693-LJM-JMS, 2009 WL 6327414 (S.D. Ind. Nov. 10, 2009) (finding defendants' counsel's failure to conduct a pre-production privilege review unreasonable).

Virtual's counsel offers no real explanation for its failure to take such reasonable steps to preserve its privilege, and its failure is, indeed, indefensible. Virtual does not suggest that it was unable to review the documents for privilege because of time constraints,[2] or that it would have been too burdensome to review for privilege given the volume of documents at issue. To the contrary, Virtual produced only 1801 documents in the January 9, 2012 production at issue, of which 28 were privileged. Moreover, of those documents, 515 were image files or documents previously produced to Virtual by Couristan, none of which would have required any privilege review. Thus, Virtual's counsel would only have been required to review 1,286 documents prior to production. Given the relative lack of burden such a review would have imposed, especially considering that the documents were first requested on July 26, 2011 (more than five months before production), Virtual's counsel's failure to conduct *any* sort of review is inexplicable.[3] See Bensel, 248 F.R.D. at 180 (finding that disclosure of 25 documents out of 6000 pages weighed in favor of waiver); Ciba-Geigy, 916 F.Supp. at 414 (finding disclosure of 7 privileged documents out of 681 documents produced – a smaller proportion than Virtual produced in this action – weighed in favor of waiver). Similarly, Virtual's counsel does not deny

---

[2] Virtual does reference supposed time pressures, but never suggests to the Court that review would have been impossible in the time allotted. In any event, as discussed in note 2 below, Virtual's reliance on supposed "time pressure" is legally irrelevant and misplaced under the circumstances.

[3] The long lead time between the discovery requests and the production, and the fact that Virtual itself proposed the dates it now contends caused it "time pressure," negate any argument that Virtual was operating under unfair time constraints and that those constraints should excuse its negligence. See Peterson v. Bernardi, 262 F.R.D. 424, 430 (D.N.J. 2009) (finding that production of documents several months beyond the initial due date demonstrated that any time constraints "were self-imposed and do not excuse his careless actions"). See also Ciba-Geigy, 916 F.Supp. at 413 (where defendants had voluntarily agreed to scheduling order, any time constraints were self-imposed). Here, Virtual not only agreed to the schedule (and in fact self-identified the ordered production dates as dates by which it could make its production), but had months to produce its documents, and any delay in gathering electronic documents was entirely self-imposed. Virtual cannot rely on its prior failure to meet its discovery obligations (by ignoring its obligation to collect, review and produce electronic documents) as an excuse for its current failures.

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 4 of 10

that a reasonable keyword search would have identified the documents, which were privileged on their face. Instead, on the call with the Court, Virtual's counsel offered only the refrain that has now become all-too-common: "*mea culpa*." As a matter of law, that admission of total culpability prohibits this Court from allowing Virtual to reclaim the documents.

Similarly, Virtual failed to promptly take reasonable steps to rectify the disclosure. To the contrary, Virtual further admitted to the Court that, after Couristan informed Virtual that it had e-mail between Mr. Sucher and his counsel and intended to use them in Mr. Sucher's deposition, Virtual waited some 16 days before seeking the return of the documents. That is neither prompt nor reasonable. See Kmart Corp. v. Foodstar, Inc., 2010 WL 4512337 *2 (N.D. Ill. Dec. 1, 2010) (response to inadvertent disclosure was not sufficiently prompt where producing party waited 12 days before filing motion for return of documents); Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plans of Greater N.Y., No. 07 CV 1471, 2009 WL 393644, *3 (E.D.N.Y. Feb. 13, 2009) ("Waiting six days before responding to [receiving party's] letter [identifying representative documents] and another nine days before notifying [receiving party] of specific documents inadvertently produced was not 'prompt'").

Simply put, Virtual paid no attention at all to the preservation of its privilege, neither: (1) taking the bare minimum basic preventative steps of conducting a privilege review or keyword filter to prevent disclosure; nor (2) showing any urgency in responding to Couristan's notice that the privileged documents had been produced. Under these circumstances, the privilege has been waived, Virtual must be compelled to produce the documents, and Couristan should be allowed to question Mr. Sucher thereon when his deposition is resumed on May 22, 2012. See Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 119 (D.N.J. 2002) (finding waiver where producing party took "limited precautions" to prevent production and its "efforts to retrieve the documents were minimal").

**B.   Plaintiff's Contention: It Did Not Waive Attorney Client Privilege as to its Inadvertently Disclosed Documents**

The Court may recall that the first round of document discovery production by Plaintiff had taken place by November in this matter. The documents produced were in hard copy. Thereafter, Defendant objected to the fact that documents had not been produced electronically and in "native format", requiring that the Court schedule an in person conference, and a "meet and confer" to resolve Defendant's objections.

As a result Plaintiff was directed to supply certain documents, essentially emails and invoices, in the requested format and to determine how many requested third party documents existed so that the Court could determine whether it would be too onerous to require their production in electronic native format with all existing metadata.

Plaintiff commissioned a contractor to review the documents involved and assess the cost of rendering them in the required format. This process took some time and Plaintiff was

constantly pushed to produce a date when this matter could be resolved and the documents produced. Originally Virtual had suggested that the documents that unquestionably were to be produced in native format could be quickly produced while the balance, as to which there was still a question as to whether they would be ordered produced in that fashion, were reviewed. When Virtual found out that it would be considerably more expensive to produce the documents in two lots, the decision was made to do all the production in one lot. This meant delaying the final production.

The parties had entered into a Discovery Confidentiality Order. That order allowed the parties to designate certain documents "confidential" and others "for attorney's eyes only." We explained these provisions to our client carefully, instructing him to make such designations on appropriate documents before turning them over to his contractor. We also instructed him to segregate; i.e., keep out of the document production, any documents consisting of communications with attorneys.

Some of the documents he eventually turned over to the contractor had not been previously produced as they related to third party customers of Virtual as to whom we had originally unsuccessfully objected to production. In view of the time constraints imposed on us by our adversaries and the Court, we did not review these documents before they were supplied to the contractor. Some of them also referred to claims asserted or contemplated to be asserted against other parties.

The documents were under severe time constraints, eventually supplied installed electronically on a flash file which Virtual transmitted to our office. In view of time concerns we immediately forwarded it to Defendants' counsel with our prior time-consuming review. We assumed our client had segregated all attorney/client material.

We were subsequently notified by Couristan's attorneys by letter that certain of the documents produced were possibly communications protected by the attorney/client or work product privilege. Bates stamp numbers were supplied as to 28 documents. The Discovery Confidentiality Order has a "clawback" provision which allows one to demand the return or destruction of such items and a further procedure to determine whether they may continue to be protected. As soon as I had a chance to review the subject documents I demanded their destruction. Couristan's attorneys immediately complied with my demand and the issue of their use by the Defendant is now before the Court.

After conferring with our client we determined that Virtual had misunderstood our instructions and had simply marked these documents "confidential."

The documents themselves are referred to in Plaintiff's privilege log a copy of which is included herewith as Exhibit A. Three of them consist of images of a law firm's logo on the center of a page. The law firm is not involved in this litigation. Two of them consist of unsigned draft complaints in family law actions in which Virtual's principal, Tom Sucher, is a

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 6 of 10

party. Couristan's counsel have indicated they are not interested in these complaints. Twelve of them are communications with counsel (not our firm) discussing the merits, tactics and strategy of asserting claims against other parties, none of them in this litigation or any other existing litigation in this district. It is unclear on the face of these communications whether any claims have ever been filed. One consists of a draft of an unsigned cease and desist letter forwarded to Virtual's counsel in another state. Two of them don't appear to be privileged upon further review and Virtual will not continue to assert the privilege as to them (VIRTUAL004757 and 004759 ).

None of the documents refers, in any way to any of the claims or the parties in the present case.

Virtual contends that, under the circumstances, it took reasonable steps to protect the documents and otherwise meets the standards for continued protection under the attorney/client privilege.

Defendant has not previously contended that any of the subject documents are not attorney/client communications of the type ordinarily protected by the privilege so we are assuming that Defendant is not challenging that characterization. Nor has Defendant contended that the disclosure of the documents was done as part of a knowing, intentional waiver. Waiver of the attorney-client privilege must generally be voluntary, Redland Soccer Club v. Department of the Army, 55 F.3d 827, 856 (3d Cir.1995), cert. denied, 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996),This case, however raises the issue of the legal significance of an inadvertent waiver.

Inadvertent disclosures of privileged material are now dealt with under Fed.R. Ev. 502 (b), which provides as follows:

> **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Plaintiff contends that it took reasonable steps to prevent the disclosure and further reasonable steps to rectify the error.

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 7 of 10

As indicated by the Bates stamp numbers of the subject documents, Plaintiff produced thousands of pages of documents in two submissions. The second submission required Plaintiff, not only to produce them electronically, in a specific format, but also to produce a whole new category of documents which it had previously resisted producing, those referring to dealings with third parties. These documents, which hadn't previously been reviewed by counsel, were being demanded under tight timelines. Accordingly counsel advised the client how to filter out privileged material. The client misunderstood the instructions. As soon as Plaintiff's counsel verified that most of the subject documents implicated the privilege, demand was made that they be destroyed and that was promptly done, in accordance with the Discovery Confidentiality Order and in compliance with Fed.R.Civ.Pro.26(b)(5)(B).

In the course of producing thousands of pages of documents, 28, involving attorney/client communications, none of which had any application or reference to the present case, were inadvertently produced.

The Advisory Committee Notes to the relevant Evidence Rule, which was amended to its present form in 2007, adverts to the case of Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985), as an example of a case which, before the rule revision, fashioned a four part test to determine whether an inadvertent disclosure would constitute a waiver. The Lois case stated the test in these words:

> What is at issue here is whether or not the release of the documents was a knowing waiver or simply a mistake, immediately recognized and rectified. The elements which go into that determination include the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of the discovery and the extent of the disclosure. There is, of course, an overreaching issue of fairness and the protection of an appropriate privilege which, of course, must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference. 104 F.R.D. at 105

But then, as to the Lois test, the Advisory Committee noted:

> The stated factors (none of which is dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness. *The rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible enough to accommodate any of those listed factors.* Other considerations

> bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production. (Emphasis added)

The Lois factors as with other similar tests, in other words, are not fixed in stone and the Court's approach should be flexible and geared to the particular facts of the case. The Court should take into account the time constraints Plaintiff faced as well as the extent of the disclosure. For example, in *Lois*, the court there adverted to the fact that the number of documents disclosed was relatively small in relation to the extent of discovery and ruled that a waiver had not occurred.

In the case of Briese Lichttechnik Vertriebs GmbH v. Langton, 272 F.R.D. 369.(S.D.N.Y.2011), plaintiff had inadvertently produced 14 privileged documents out of a total production of 118. As soon as it discovered it plaintiff demanded their return. The court, in deciding against waiver, specifically referred to the language of the above evidence rule but barely adverted to the requirement of "reasonable steps to prevent disclosure" and focusing instead on the fact that the plaintiff had clearly moved quickly to demand the return of the documents in accordance with Rule 26. Id. at 372-3. The court's only reference to the prevention of disclosure by the plaintiff was to "a facially adequate screening process undertaken by one of their trial counsel in Germany..." Id.

In the case of Fidelity and Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516 (E.D. Pa. 1996) the court enunciated the five factor test usually cited in this Circuit:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;
>
> (2) the number of inadvertent disclosures;
>
> (3) the extent of the disclosure;
>
> (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors. 168 F.R.D. 522

Applying these standards, the Court found the number of disclosures small relative to the number of documents reviewed and produced, and that the extent of the disclosure was minimal. Furthermore, the items produced themselves disclosed no significant facts concerning the substance of any legal opinion. In addition, the court noted that "a tight discovery schedule created time pressures that also weigh against waiver." Id. The court concluded that "While Plaintiff has not been especially vigilant in its efforts to rectify these disclosures, we find that the interests of justice are best served by holding that a small number of

insignificant disclosures do not constitute a waiver." Id. As for the efforts by plaintiff to avoid disclosure the court characterized them as "at least minimally adequate." Id. Counsel gave all the tagged documents to a paralegal, instructing him to create a privilege log but didn't review them before they were turned over to the adversaries. There, as in this case counsel relied on another who had been instructed to segregate the documents, which he mistakenly failed to do.

The Fidelity court also cited the Delaware case of Berg Electronics v. Molex, Inc., 875 F.Supp. 261, 262–63 (D.Del.1995), to show that cases in the Third Circuit were not all uniform in the application of standards to determine when inadvertent disclosure was a waiver. In Berg, the court rejected the five factor balancing test stating:

> This balancing approach results in an uncertain privilege. That is the protection of the privilege will depend on courts reviewing and making judgments on a broad array of facts, such as what procedures were put in place to identify and copy the documents, whether there was a written description of the procedure to be followed, and what were the time pressures present in the production. In addition, courts might ask such questions as was the person doing the copying given specific instructions not to copy the privileged documents, who reviewed the photocopying, were five hundred pages of documents copied or five thousand, and is two days, three days, or ten days too long a delay in taking steps to rectify the error? This approach also has the disadvantage of inviting parties to litigate almost every dispute where there is a claim of an inadvertent waiver, as it suggests the decision on whether the protection of the privilege has been lost will be made on a case by case basis and will depend on a particular court's judgment on whether it would be reasonable to find a waiver in the context of the facts and circumstances of that case. 875 F.Supp. 262-263

Instead of the balancing test, the Berg court stated:

> The court finds the rule of law established by these cases that look to intent best serves the interests of the attorney-client privilege, as it protects the client from the apprehension that consultations with their legal advisers will be inadvertently disclosed and applies the privilege in a way that is predictable and certain. Id at 263.

Applying the actual intention test, the court concluded:

Magistrate Judge Michael A. Hammer
March 28, 2012
Page 10 of 10

> It is clear that Molex and its counsel did not intend to produce these documents; on the contrary, they intended not to produce them, and the documents were produced by mistake.
>
> As the court has found the production was inadvertent, it concludes Molex has not waived the privilege that protects these documents from disclosure in discovery. Id.

Given the small number of inadvertent disclosures of not very substantive material clearly not intentionally produced, the time constraints governing the production, and Plaintiff's immediate demand for their return, the interest of justice supports a finding that the privilege was not waived.

\*     \*     \*

In conclusion, the parties await the Court's ruling on Couristan's motion to compel the production of Virtual's privileged communications.

Respectfully submitted,

Robert S. Weisbein

cc: Robert Margulies, Esq. (via email)
Frank Catalina, Esq (via email)
Jay Lubetkin, Esq. (via email)

4811-6604-3663.2

**EXHIBIT A**

VIRTUAL STUDIOS, INC. vs. COURISTAN, INC.

PRIVILEGE LOG OF DOCUMENTS PROTECTED UNDER ATTORNEY / CLIENT AND OR WORK PRODUCT PRIVILEGE:

| BATES NO(S) | DOCUMENT TYPE | FROM | TO | DATE | SUBJECT |
|---|---|---|---|---|---|
| 003699 | email | T. Sucher | Shannon Scearce | undated | Request to law firm for information re: "Fibreworks". |
| 003712 | email chain | T. Sucher | Heather Clay | 12/09/08 | Re: attached email chain between Sucher and Virtual's attorney, Doug Johnson |
| 003713 | TIFF image of law firm logo and two blank "text documents" | n/a | n/a | undated | n/a |
| 003714 | email chain | T. Sucher | Heather Clay | 12/19/08 | Discussion of attached email from D. Johnson, counsel re: claims against Beaulieu and litigation tactics |
| 003819 | email chain | D. Kennedy (counsel) | T. Sucher, et al. | 12/19/07 | Discussion of resolution of claims against Stone Express. |
| 003951 | email | D. Kennedy (counsel) | T. Sucher | 11/14/07 | Counsel inquiring as to adequacy of text of letter |
| 003952.001 and 002 | unsigned two page letter | D. Kennedy (counsel) | D. Dobosh (Joy Carpet) | 01/12/02 | Cease and desist letter |

Page 1 of 3

| BATES NO(S) | DOCUMENT TYPE | FROM | TO | DATE | SUBJECT |
|---|---|---|---|---|---|
| 003997 | email | Amy Hodges (counsel) | T. Sucher | 08/25/06 | Address and phone number of law firm |
| 204000 | unsigned complaint | n/a | n/a | undated | Draft complaint for modification of child support order |
| 004083.001 to .010 | 10 page series of emails | T. Sucher to D. Johnson (counsel) and vice versa | | 12/9/08 to 01/22/09 | Discussion of merits, tactics, and strategy of claims against Beaulieu |
| 00484 | TIFF image of law firm logo | n/a | n/a | undated | n/a |
| 004255 | email | T. Sucher | D. Kennedy (counsel) | 11/14/07 | Modification to draft of letter composed by counsel |
| 004256 | unsigned letter | | | | Exact copy of 00352 above |
| 004634 | email | Amy Hodges (counsel) | T. Sucher | 09/05/06 | Address and phone number of law firm |
| 004637 | unsigned complaint | n/a | n/a | undated | Draft complaint for modification of child support order |
| 004745 | email | D. Kennedy (counsel) | T. Sucher | 11/14/07 | Exact copy of 003951 |
| 004746 | unsigned letter | | | | Exact copy of 00352 and 004256 above |
| 004747 | email | T. Sucher | D. Kennedy (counsel) | 12/04/07 | Inquiring as to attached demand letter |

| BATES NO(S) | DOCUMENT TYPE | FROM | TO | DATE | SUBJECT |
|---|---|---|---|---|---|
| 004748 | two page letter | T. Sucher | D. Polley (Dixie Group) | 12/03/07 | Describing options for obtaining room scenes |
| 004749.001 to 006 | chain of emails | T. Sucher D. Johnson | D. Johnson T. Sucher | 12/09 to 12/22/08 | Tactics and strategy for recovering from Beaulieu |
| 004750 | TIFF image of law firm logo | n/a | n/a | updated | n/a |
| 004753 | 2 emails | T. Sucher | D. Kennedy | 11/13/07 | Discussion of claims against Joy |
| 004754 | 3 emails | T. Sucher D. Kennedy | D. Kennedy T. Sucher | 11/13/07 | Discussion of claims against Joy |
| 004755 | chain emails | T. Sucher D. Kennedy | D. Kennedy T. Sucher | 11/26/07 | Discussion of claims against Joy |
| 004756 | chain emails | T. Sucher D. Kennedy | D. Kennedy T. Sucher | 11/26 to 11/27/07 | Discussion of claims against Joy |
| 004757 | room scene cost overview | n/a | n/a | undated | Statement of options for obtaining room scenes |
| 004758 | email | T. Sucher | D. Kennedy | 11/13/07 | Discussion of terms for obtaining room scenes |
| 004759 | statement of terms and conditions | n/a | n/a | n/a | Version of T&C on reverse of invoices |