

**FOLEY & LARDNER LLP**

**ATTORNEYS AT LAW**

90 PARK AVENUE
NEW YORK, NY  10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3528
rweisbein@foley.com EMAIL

CLIENT/MATTER NUMBER
092958-6007

November 14, 2012

<u>V<small>IA</small> ECF</u>
<u>C<small>OURTESY</small> C<small>OPY</small> V<small>IA</small> F<small>EDEX</small></u>

Magistrate Judge Michael A. Hammer
Martin Luther King, Jr. Federal Building &
   U.S. Courthouse
Court Room MLK 3C
50 Walnut Street
Newark, New Jersey 07101

       Re:    *Virtual Studios, Inc. v. Couristan, Inc., Case No. 11-cv-00427-JLL-MAH*

Dear Magistrate Judge Hammer:

       Pursuant to the Court's order, Plaintiff Virtual Studios, Inc. ("Virtual") and Defendant Couristan, Inc. ("Couristan") hereby jointly submit their arguments in connection with Virtual's motion to compel a response to "Interrogatory No. 8", and Couristan's cross-motion to strike Virtual's amended interrogatory responses and initial disclosures, and to sanction Virtual and its counsel pursuant to 28 U.S.C. § 1927.

**Virtual's Position**

       On or about May 9, 2012, counsel for the Plaintiff served the Defendant with a set of eight (8) supplemental interrogatories, designated as its second set. The first seven (7) sought explanations of various phrases found on a spreadsheet originally prepared as a worksheet by the Defendant, but supplied in response to discovery requests, subject to a stipulation governing its

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 2 of 28

use. The spreadsheet purported to show which of the room scenes of the Plaintiff the Defendant

had used for more than one year and for how long. The Plaintiff contends that its licenses with

the Defendant allowed use for only one year and that any use beyond that time without

permission and additional rental payments constituted copyright infringement. The

document's existence was disclosed late in the discovery process, not through any fault of the

Defendant's, but the Plaintiff felt that some of the terminology contained in the spreadsheet was

ambiguous and that the most efficient way to discover the meaning of those terms was by

supplemental interrogatories issued not long after the spreadsheet's production. This was

considered preferable to another round of depositions.

On June 11, 2012, slightly more than a month, after having been served with the

additional interrogatories, counsel for the Defendant notified counsel for the Plaintiff that it

would not answer any of the Interrogatories primarily on the ground that the number exceeded

the amount provided for in the original Scheduling Order. This occasioned a letter application to

the Court for assistance in getting the Interrogatories answered. As a result respective counsel

met and conferred. We notified Your Honor that the Defendant had agreed to answer the first

seven additional Interrogatories on condition that it be allowed the right to propound additional

Interrogatories on the Plaintiff should it decide it needed them.  A stipulation providing this

agreement was filed and "So Ordered" by the Court.

It is the dispute currently before Your Honor.  The issue with respect to Interrogatory No.

8 was not, however, resolved. This interrogatory seeks to have the Defendant disclose the

amount of gross income it derived from the sale of carpeting products whose sale was promoted

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 3 of 28

by the Plaintiff's room scenes used for more than a year. A copy of that interrogatory is attached hereto as Virtual Exhibit A. The purpose for seeking this information, which is in the sole and exclusive possession and control of the Defendant, is to allow the Plaintiff to seek to recover profits derived from the Defendant's infringing uses in addition to actual or statutory damages. The recovery of such profits as a remedy available to the copyright holder in addition to damages is specifically provided for in the Copyright Act at 17 U.S.C. 504(b). In asserting a claim for profits the Plaintiff meets its *prima facie* burden by simply showing what the gross earnings of the infringer attributable to the infringing use were. The burden then shifts to the Defendant to allocate the amount of those earnings and show that they do not constitute profit. Frank Music Corp. v. Metro Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985), Mon Cheri Bridals, Inc. v. Wen Wu, 383 Fed Appx. 228, 239 (3d Cir.2010).

Admittedly, the Plaintiff did not initially assert that it would seek to recover profits in addition to damages both in its Rule 26 Disclosure Statement and in its initial Answers to Interrogatories. At the inception of this matter, counsel for Plaintiff did engage in a conversation with counsel for the Defendant in which it was said that the Plaintiff would not proceed to recover profits. At the time, that was truly our intention at the time based on our understanding of what we thought were the difficulties of proving indirect profits. Direct profits are profits that are generated by selling or otherwise exploiting an infringing product while indirect profits do not flow directly from the sale or exploitation of the infringing product. Mackie v. Reiser, 296 F.3d 909, 914 (9th Cir. 2002). However, early in May, we moved to retain an expert witness to assist us with the case. That expert was eventually retained on July 3, 2012. Based on initial

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 4 of 28

conversations with the expert we reinvestigated the issue of indirect profits and concluded that we would be able to assert and prove such a claim. Accordingly, we served Interrogatory No. 8.

Counsel for the Defendant's initial objection to the Interrogatory was, among other things, to assert that this was inconsistent with the Plaintiff's Answers to Interrogatories and Rule 26 Disclosure Statement. Upon consideration, we moved with alacrity to amend both of those documents. Counsel for the Defendants involved reaction to this accusation of frivolousness and threats of applications for sanctions. The simple fact is this is simply a matter entrusted to the sound discretion of the Court. Your Honor may very well rule that the Plaintiff is not entitled to seek the information sought in Interrogatory No. 8, at which point the issue of striking amendments to our discovery documents would become academic. However, we felt we owe it to our client's interests to raise the issue. On the merits we believe the Defendant's objections are entirely without merit.

The Defendant will assert that we are acting after the close of fact discovery. We disagree. The Defendant has reserved the right to conduct an additional deposition of the Plaintiff's principal, Thomas Sucher, and has also reserved the right to propound additional interrogatories. Apparently the closing of fact discovery is a one way street for the Defendant. When all counsel met with Your Honor in the recent settlement conference, you made it clear on the record that the issue of Interrogatory No. 8 was one matter as to which fact discovery remained open, at least until you decide that issue. The question of closing discovery is one for the Court to decide, not counsel, and quibbling over such matters is, not untypically, to advance form over substance.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 5 of 28

Addressing the Defendant's contention that it would be prejudiced by the allowance of this additional discovery, how, in the legal sense of that term, would this occur? Admittedly, to comply with the requested discovery will require additional work and expense on the part of both parties, including the Defendant.  However, that additional work and expense would also have occurred if the Plaintiff had asserted a claim for profits earlier. Additionally, defending against a claim for profits doesn't require the Defendant to rethink or retool its defense strategy in any respect. The issue of profits has no impact on the operative facts of the case.  The Defendant need not take any position to deal with this additional claim that is inconsistent, in any way, with any positions or actions previously taken.  The fact is that a claim for damages is not an alternative or different theory of damages. The Copyright Act provides it as an ***additional***, not an alternative remedy. Yes, there will be some additional few weeks' delay in getting this case to trial, but this matter is not an old one by any stretch of the imagination and should be ready to try within a time period pretty much consistent with the average of most matters before the Court. As for the authorities relied on by the Defendant to support its request for the drastic remedy of precluding the Plaintiff's claim for profits, we believe they are inapposite and fail to compel the result sought by the Defendant.

The unreported case of Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp., 2005 WL 977850 (SDNY) cited by the Defendant, is completely distinguishable. That case involved a last minute attempt to amend a Rule 26 statement to assert a currency fluctuation damage claim.  A number of factors in that case are not present here. The court in that case said that the Plaintiff could have computed the damages at the time it completed its disclosure

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 6 of 28

statement because it didn't need discovery for that purpose. In the case at bar, the Plaintiff clearly

needs discovery as the facts are entirely in possession of the Defendant. Also, and perhaps more

importantly, the court pointed out in its decision that the Plaintiff had completely failed to

provide any legal authority, although requested to do so by the court, to support the validity of its

new damage theory. Again, this factor is not present here as the statute clearly states that profits

are recoverable.

The Defendant also cites the case of Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir.

2005). There, discovery had been completed and cross motions for summary judgment had been

filed before the Defendant moved to preclude any evidence concerning damages in an *in limine*

motion filed almost a year after the close of discovery. There was no attempt in that case to

amend the Rule 26 statement or to assert any new "theory" of damages. Instead, the Defendant

objected to the fact that the disclosure statement failed to contain an amount or method of

computation of damages. The one New Jersey case we were made aware of, another unreported

decision, Engers v. AT&T, 2005 WL 3988698 (D.N.J), did not involve an attempt to amend

Rule 26 disclosures but rather the last moment production of a sworn statement by an

undisclosed witness on a summary judgment application. There, although the judge repeated the

3d Circuit approach that evidence preclusion is an extreme and unusual remedy, its decision was

largely based on its determination that the witness statement was largely inadmissible hearsay.

The Defendant also cites Oracle USA, Inc. v. SAP AG, 264 F.R.D. 541 (N.D. Cal. 2009).

However, the facts of that case were rather extreme compared to our case. Here's how the Oracle

court itself, in part, described the course of discovery in that case:

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 7 of 28

> This Court has closely monitored discovery in this complex litigation, holding thirteen discovery conferences addressing the progress of discovery and providing guidance on the numerous complex issues that have arisen, and six contested hearings on discovery motions. The production of electronic data in this case has been huge. For example, Plaintiffs' production of a collection of databases relating to the Customer Connection database totaled two terabytes, and Defendants' production of their Data Warehouse contained over ten terabytes of data. *See*, Joint Discovery Conference Statement at 7, 11, Oracle USA, Inc., et al. v. SAP AG, *et al.*, C-07-1658 PJH (EDL) (N.D.Cal. Mar. 24, 2009). Discovery has already cost each party millions of dollars. For example, Defendants spent approximately $100,000 per custodian on document review and production alone, and the parties have agreed to a limit of 140 custodians. 264 F.R.D 543

Obviously the case at bar isn't anything like the above description. In any event, under the foregoing extreme circumstances the court declined to allow another round of expensive electronic discovery to assert a new damage theory. Numerous cases in our circuit have made clear that the preclusion of evidence is an extreme sanction to be used sparingly. The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence. Astrazeneca AB v. Mutual Pharmaceutical Co., 278 F. Supp. 2d 491, 510 (E.D. Pa 2003) The Plaintiff here is not attempting to present new evidence, but to obtain it. The possibility of surprise is nonexistent as the evidence is in the Defendant's possession. Courts in this circuit are mindful that the "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Borden v. Ingersoll-Rand Co., 2003 WL 21488511, (E.D. Pa.) Courts have even been reluctant to exclude evidence at trial for failure to painstakingly comply Rule 26. In the case of DeMarines v. KLM Royal Dutch

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 8 of 28

*Airlines*, 580 F.2d 1193 (3d Cir. 1978), the Court of Appeals reversed the trial court's decision to

strike certain testimony of an expert witness because it hadn't been disclosed in his report. In

doing so the court stated:

> Examining the facts of this case in the light of our standard of
> review, we hold that the expert testimony should not have been
> excluded. It may be that KLM did not conform precisely to the
> pre-trial notice requirements, and we are sensitive to the district
> court's need to maintain control over the discovery process and the
> fair, orderly presentation of evidence. Yet, exclusion of evidence is
> a drastic sanction. 580 F.2d at 1202 (citing Coleco Industries v.
> Berman, 567 F.2d 569, 576 n. 14 (3d Cir. 1977)).

If the courts of this circuit are reluctant to exclude evidence that was not previously

disclosed, even at trial, then, *a fortiori,* even greater caution should be exercised before barring a

plaintiff from asserting a claim this relatively early in a matter where the opposing party has

ample time to respond and defend itself.

Finally, it would be shortsighted to complete this submission without a word about the

basis for the Plaintiff's claim to indirect profits. A number of cases have, in the past, held that a

Plaintiff may, if he can provide appropriate proofs, recover, in addition to direct profits, such

indirect profits as are attributable to an infringer's promotional use of copyrighted works. See,

e.g. Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1548 (9thCir.1989),

Cream Records, Inc. v. Jos. Schlitz Brewing Co.754 F.2d 826, 829 (9th Cir.1989)

In the case of Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003) the

Court of Appeals held that the trial court had improperly set aside a verdict in which a jury had

awarded Plaintiff indirect profits arising from sales of cars promoted through the infringing use

of plaintiff's copyrighted phrase. Plaintiff's case was supported essentially by circumstantial

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 9 of 28

evidence of the emphasis with which Defendant had used the phrase to promote sales. In <u>Lucky Break Wishbone Corp. v. Sears Roebuck and Co.</u>, 373 Fed.Appx. 752 (9th Cir. 2010) a jury verdict awarding over a million dollars in indirect profits was upheld. There Plaintiff was the creator of a copyrighted reproduction of a wishbone which the Defendant used to promote certain sales. The court there once again pointed out that the Plaintiff need merely prove the amount of income realized by the Defendant, at which time the burden devolved on the Defendant to show allocation.

The Defendant has maintained that it doesn't sell to retail customers but that the Plaintiff's room scenes images are supplied by the Defendant to retail sellers to promote *their* sales and that, therefore, the Plaintiff's quest for sales income is misguided. This argument is sophistry. It defies common sense to assume that the Defendant orders and pays money for the creation of promotional materials for any other reason than to ultimately boost sales.

It is true, at trial a Plaintiff must establish some nexus between a Defendant's sales and the infringement. However, the cases have shown that this nexus can be proven by circumstantial evidence and need not involve surveying customers or placing them on the stand. In the leading case of <u>Polar Bear Productions, Inc. v. Timex Corporation</u>, 384 F.3d 700 (9th Cir. 2004), Timex acquired the right to use a kayaking video and related still images it acquired from Plaintiff, Polar Bear to promote its products. Timex's license was for one year, as in the case at bar. Timex chose to continue to use the images after the year had expired without the Plaintiff's permission or knowledge. One of the unauthorized uses was through a promotional program with the soft drink, Mountain Dew. At trial the Plaintiff offered testimony via an expert linking

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 10 of 28

Timex's infringement with sales revenues. The jury awarded, inter alia, an amount representing

indirect profits arising out of sales promoted through the use of the infringing images. On appeal,

the Third Circuit court addressed the issue of the Plaintiff's burden as to indirect profits. Citing

language from Mackie v. Reiser, 296 F.3d 909 (9d Cir. 2002), the court stated that the Plaintiff

"must proffer some evidence ... [that] the infringement at least partially caused the profits that

the infringer generated as a result of the infringement." Id. at 713. The Court reasoned, Polar

Bear met that standard, stating:

> Sufficient circumstantial evidence also supports Polar Bear's
> argument that the use of "PaddleQuest" images contributed to sales
> of Expedition watches in Timex's promotional efforts with
> Mountain Dew. The Mountain Dew promotional materials offered
> consumers the opportunity to purchase a Timex Expedition watch
> at a discounted price. Polar Bear demonstrated a sufficient causal
> nexus *through evidence that the Mountain Dew booklet
> contained an advertisement featuring the infringing material that
> customers who ordered Timex Expedition watches through the
> Mountain Dew promotion would have seen the advertisement,
> and that Timex profited from the promotion.* Polar Bear satisfied
> its burden of establishing the infringer's relevant gross revenue, as
> required by §504(b), by presenting sales figures from Timex's
> press releases stating that the Mountain Dew promotion generated
> $564,000 in sales. *Id* at 713 (emphasis supplied).

In our case, the Plaintiff is quite capable of showing that its images were provided to

prospective purchasers of the Defendant's products, that they would have seen them, and that the

Defendant profited from their sales, just as in Polar Bear. In any event, proof of a nexus is a

matter to be demonstrated at trial or, at the earliest, on a motion for summary judgment. It has no

place in an argument about the scope of discovery.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 11 of 28

The Defendant has sought to short circuit the process the Court and litigants must go through by submitting a declaration by Lawrence Mahurter, an executive for the Defendant, purporting to instruct the Court on industry standards and practices and other matters factual. This declaration was presented to Counsel for the Plaintiff in its present form at 12:00p.m. on November 13, approximately 24 hours before this submission was due. It was not even listed on the exhibit list at the end of the proposed joint letter counsel for the Defendant counsel forwarded two days ago and we wouldn't even have known of its existence except for the fact that it was mentioned in the Defendant's portion of the draft, although not supplied until counsel for the Plaintiff objected to its submission, sight unseen, by email on the evening of November 12. Of course, at this late stage, the Plaintiff will not be able to respond to all of the factual assertions therein by November 14 as its principal, Thomas Sucher, whose businesses are in Georgia and Tennessee, has not been reachable by phone or email as of the time of this writing.

Furthermore, it was the Plaintiff's clear understanding that the Court did not provide permission for the filing of full motions with evidentiary material in the form of sworn statements by party witnesses but that the Court preferred to entertain argument in the form of a joint letter. We have, therefore, been taken totally by surprise by this attempt to offer evidence on the merits of the case without advance notice. Finally, an examination of the Mahurter declaration discloses that most of it is patently inadmissible in its present form, its defects probably incurable. It is a wholly self serving statement purporting to offer opinion evidence concerning what it is that causes hypothetical buyers to purchase the Defendant's carpet. Not the least of its problems is that, at no place in the record is Mr. Mahurter qualified as an expert.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 12 of 28

For the foregoing reasons, the Plaintiff objects to its submission and to its consideration by the Court.  In the interim, the Plaintiff will continue its efforts to reach out to its principal to provide a response to the factual assertions in the declaration.  If counsel is successful in that regard it will provide it to the Court as soon as it is available in the hope that, should the Court consider the contested declaration, it will also allow the Plaintiff a reasonable time to respond thereto.

### The Defendant's Application for Sanctions

The Defendant's portion of this joint letter contains what appears to be a short cut version of an application for sanctions against the Plaintiff and counsel.  Counsel for the Plaintiff is unaware that the Court ever invited or even granted permission for any such application. We are also unaware that applying for additional discovery, an extension of time, or for leave to amend discovery responses are sanctionable offenses. However, rather than arguing the merits of this unusual application here and now Counsel for the Plaintiff would prefer to request that if the Court believes it should entertain this application the Plaintiff should have the benefit of a fully supported motion on appropriate notice and  a reasonable opportunity to defend itself.

For all the reasons above, the Plaintiff respectfully requests that it be allowed to propound, and the Defendant be required to answer, Interrogatory No. 8.

### Couristan's Position

The only question truly before the Court is what sanction ought to be applied against Virtual for its acknowledged failure to adequately disclose its damages theories in its Initial

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 13 of 28

Disclosures and interrogatory responses.[1]  As demonstrated below, given the lack of justification

for Virtual's failures, and its counsel's repeated admissions that it lacked the necessary

competence to handle this action, preclusion of Virtual's belatedly asserted damages theory, and

sanctions of Couristan's costs in connection therewith, are the only appropriate responses.

## FACTUAL BACKGROUND

Virtual filed its complaint in this copyright infringement action on January 24, 2011.

(Docket No. 1).  Significantly, Virtual's complaint sought as damages, *inter alia*, "*[a]ll gains,*

*profits and advantages derived by [Couristan] as a result of its infringement of [Virtual's]*

*copyrights ...*" Compl., at ¶ 14.  Almost immediately thereafter, the parties began exploring the

possibilities for settlement.  In connection therewith, on March 21, *2011*, Couristan's counsel

wrote Virtual's counsel, Frank Catalina, and explained Couristan's position with respect to

Virtual's claimed entitlement to Couristan's profits.  As relevant to this motion, and Virtual's

claim to have but recently learned that the Copyright Act allowed recovery of an infringer's

profits under certain circumstances, the letter stated: "*Further, Virtual Studios would not be*

*entitled to an accounting of Couristan's profits under § 504(a) and (b) because there is no*

*causal link between Couristan's profits and its purported unauthorized use of the photographs*

---

[1] Virtual protests that Couristan's position is a "shortcut" application for sanctions against which it has had no opportunity to defend.  That is nonsense.  Couristan has made clear from the outset of this dispute that Virtual's conduct violated the Federal Rules and triggered the preclusion and financial sanctions discussed herein, and repeated that position in, as described below, unsuccessfully attempting to negotiate a compromise of the dispute. Virtual has thus known of Couristan's position for months, and its failure to provide caselaw or argument with respect to that issue is not due to any lack of notice, but a function of Virtual's inability to mount a meritorious defense even with that extensive notice.  Indeed, the Court's Order of October 24, 2012 directed the parties to fully address the discovery issues included in Couristan's July 25, 2012 letter to the Court, including citations and analysis of "applicable legal authorities."  The sanctions issue was raised in the July 25, 2012 letter, and thus Virtual could and should have addressed it herein.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 14 of 28

..." Exhibit B hereto. Shortly thereafter, Couristan's counsel spoke with Mr. Catalina, who agreed Virtual had no entitlement to Couristan's profits as damages and represented that Virtual would not seek them in this action. That is not in dispute; on the contrary, Virtual expressly acknowledges it herein.

Virtual thereafter expressly waived its potential damages claim for an accounting of Couristan's profits by filing Initial Disclosures on July 28, 2011 that identified the damages it sought *only* as statutory damages and a reasonable royalty:

> Virtual intends to seek statutory damages under the Copyright Act for each unlawful infringing act as well as costs and attorneys fees provided for in the Copyright Act. Virtual will also seek damages for Couristan's breach of its contract with Virtual under the common law of contract by computing the license fees Couristan should have paid for each year it used the images beyond the terms of the respective licenses.

Exhibit C hereto. Virtual reaffirmed that position in its October 19, 2011 response to Couristan's interrogatories:

> **14. Describe in detail what the complete basis is for the amount of any claim for monetary damages relating to Virtual's claim in this lawsuit.**
>
> [Response.] The actual amount of damages cannot be computed until plaintiff, through discovery, determines how many of its copyrighted images were used for more than the license year and how many were modified, after registration, to produce infringing derivative products. *The method for computing damages is as follows*:
>
> Contract Damages:
>
> Looking back six years from the filing of the complaint one can compute, based on the number of jobs created what the lost income would have been on an annual basis for each image used for more than one year. Plaintiff charged an average of $350.00 for the use of each image for a year.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 15 of 28

> Assuming that each image was used until 2011) actual damages could be computed by multiplying all jobs competed prior to 2005 x 350 x 6. Jobs completed in 2005 would be multiplied x 350 x 5, and so forth. Plaintiff's preliminary calculations assuming a best case scenario, come to $247,450.
>
> **Infringement Damages (actual):**
>
> *Since the statute of limitations is three years) the same method above would be used utilizing a three year look-back, resulting in actual damages of $153,300. by plaintiffs preliminary calculations.*
>
> **Statutory Damages:**
>
> *These would only be available for infringements occurring after the 2007 and 2008 years when the copyrights were registered. Only the process of discovery will disclose if and when any such infringements occurred. If so, a court would likely find a statutory damage amount consisting of a multiple of actual damages, e.g., 3 to 6 times the actual damages incurred.*

See Exhibit D, Response No. 14 (emphasis altered).

Couristan based its litigation strategy on Virtual's position that it was not seeking Couristan's profits as damages, which, if recoverable (they are not), could far outstrip the potential recovery to Virtual on the theories it actually chose to pursue. Had Virtual disclosed an intent to seek Couristan's profits, Couristan's litigation strategy, settlement strategy, and discovery plan would have been significantly different. For instance, Couristan would have focused its early discovery efforts on collecting evidence that, as set forth in the letter of March 21, 2011 and Mr. Mahurter's declaration submitted herewith, Virtual's room scenes have little to nothing to do with Couristan's profits. Virtual's abandonment of profits damages has affected almost every aspect of the litigation, from the documents Couristan collected, to the discovery it

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 16 of 28

took and forewent, to its settlement positions and preparations in connection with the mediations hosted by this Court.

On or about May 3, 2012, however, Virtual's expert suggested to Virtual's counsel that it propound interrogatories seeking information as to Couristan's revenues, in connection with a claim for Couristan's profits as damages. See Exhibit E hereto. Virtual thus propounded Interrogatory No. 8, which is at issue on this motion. Exhibit F hereto. Relying on Virtual's prior representations and disclosures, Couristan timely responded to Virtual's interrogatories; with respect to Interrogatory No. 8, and as relevant to this motion, Couristan objected to the relevance of the revenue information it called for. Exhibit G hereto.[2]

More than a week later, Virtual submitted its June 20, 2012 letter to the Court asking the Court to compel a response to Interrogatory No. 8 because, "after conferring with our [Virtual's] expert, we belief [sic] that one measure o [sic] the damages plaintiff is entitled to consists of a portion of those earnings." Exhibit H hereto. Couristan's responsive letter explained, generally, that the discovery requested by Interrogatory No. 8 was irrelevant. Exhibit I hereto. The Court directed the parties to meet and confer and, when the parties could not resolve the issue with respect to Interrogatory No. 8, directed the parties to file a joint letter-brief by August 1, 2012.

---

[2] Virtual scrambles to find some inequity in the fact that Couristan responded to its interrogatories on the day the responses were due. The criticism is an odd one given Virtual's *persistent* inability to timely respond to discovery requests. In any event, the timing of Couristan's responses to Virtual's discovery requests was irrelevant to Virtual's obligations to timely supplement *Virtual's* discovery responses, which it knew to be inaccurate at least by May 3, and Virtual's reference to the supposed delay in Couristan's response provides no excuse for its failure to do so. Finally, the timing of Couristan's responses was not part of any plan to prevent Virtual from obtaining discovery.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 17 of 28

On July 17, the parties appeared for an unsuccessful mediation session before the Court. At the close of that session, the parties stipulated that, with the exception of the pending follow-up deposition of Mr. Sucher (which was itself necessitated solely by Virtual's counsel's errors with respect to the privileged documents which would be the subject of that deposition), and subject to the Court's ruling with respect to Interrogatory No. 8 and any follow-up discovery that might be necessitated based on Couristan's response (if any such response were necessary), fact discovery had closed. Nevertheless, on July 19, 2012, Virtual served purported amendments to its initial disclosures and supplementations of its interrogatory responses that sought to add Virtual's disclaimed profits-damages theory to the case. Exhibits J and K hereto. Upon receiving the purported amendments, Couristan demanded that Virtual's counsel meet and confer as to them, and followed up with a letter identifying authority for the proposition that such amendments were improper. Exhibit L hereto. In advance of the meet and confer, Virtual's asserted that its new damages theory was "not an alternative theory of damages but simply an *additional* remedy available to plaintiffs [that] doesn't implicate any new factual theory," and could be added without prejudice to Couristan. Exhibit M hereto (emphasis in original).

At the meet and confer, Virtual's counsel acknowledged Virtual had expressly disclaimed any right to Couristan's profits as damages, but asserted they were unaware Virtual had a claim to such damages until its damages expert informed them as much at some point prior to May 9, 2012. Virtual's counsel acknowledged there was no other justification for its failure to include such damages in its Initial Disclosures or its discovery responses. Pressed to explain its delay in supplementing its interrogatory responses after its counsel "learned" of the potential availability

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 18 of 28

of profits damages, Virtual's counsel replied that "Frank [Catalina] is terribly inefficient," and that Couristan's counsel's "attention span is much closer than [Virtual's counsel's] is."

On July 31, 2012, the Court issued an order adjourning the filing of the joint letter and directed the parties to continue to meet and confer in an attempt to find a workable compromise on this issue.    In connection with that directive, Couristan worked to identify a viable compromise – first offering to allow the discovery to proceed if Virtual was willing to pay for the costs of that discovery and the disputes engendered by its belated about face, and second offering to withdraw the requests for sanctions, even as to expenses already incurred, if Virtual dropped its request for profits discovery.    In other words, Couristan offered to not only "split the baby" (by giving Virtual half of what it wanted, and withdrawing Couristan's request for half of what it was entitled to), but to allow Virtual to choose which half – obtaining the discovery or avoiding additional costs – it preferred.    Virtual, apparently secure in the belief that the Court would grant Virtual everything it had asked for without cost to it, simply declined: "With all due respect we decline your condition of assessing a counsel fee assessment in order to obtain discovery for you to answer Interrogatory #8."  See Exhibit N hereto.   Virtual never proposed an alternative compromise.

As a result of the failure of the parties' discussions, on September 25, the parties reported to the Court that no compromise would be forthcoming and that further meet and confer discussions would be fruitless.  As such, the Court directed the parties to submit this letter brief.

## ARGUMENT

A.          **Virtual Is Precluded From Seeking Couristan's Profits As Damages, And
            The Information Called For By Interrogatory No. 8 Is Thus Irrelevant**

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 19 of 28

There is no dispute that the information sought by the interrogatory in issue is relevant, if at all, only to Virtual's claim to entitlement to Couristan's profits. Virtual, however, is precluded from asserting any such claim, because: (1) it did not identify that theory of damages in its Initial Disclosures; and (2) it both failed to identify that theory of damages in its initial interrogatory responses and failed to seasonably supplement those responses when it belatedly decided to assert that claim. Both failures require preclusion.

Rule 26(a)(1) of the Federal Rules of Civil Procedure require parties to disclose certain basic information at the outset of litigation, including "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(iii) (2012). Initial disclosures "function[] to assist the parties in focusing and prioritizing their organization of discovery[,] … enable the parties to assess their risk and undertake an informed settlement analysis … [and] facilitate[] the efficient administration of a case …"[3] For that reason, parties are required "to conduct a reasonable inquiry in advance" of making them.[4]

So significant are the initial disclosures that Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that, where a party fails to make a required initial disclosure, that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1)

---

[3] OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.), 340 B.R. 510, 538 (Bankr. D. Del. 2006) (internal quotation omitted). See also In re LG Front Load Washing Mach. Class Action Litig., Civ. Action No. 08-51, 2011 U.S. Dist. LEXIS 492, *-5 (D.N.J. Jan. 4, 2011) (The fundamental purpose of early disclosures is to accelerate the exchange of information needed to assess settlement, assist the parties in organizing and prioritizing their discovery, and prepare the case for trial") (internal quotation omitted).

[4] Sender v. Mann, 225 F.R.D. 645, 650-51 (D. Colo. 2004).

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 20 of 28

(2012) (emphasis added).  That rule of preclusion applies where, as here, a party fails to disclose

a particular damages theory in its Initial Disclosures, and later attempts to amend them to assert

that theory close to or after the close of fact discovery.   See, e.g., Austrian Airlines

Oesterreichische Lufverkehrs AG v. UT Fin. Corp., No. 04 Civ. 3854, 2005 U.S. Dist. LEXIS

7283, *4, (S.D.N.Y. Apr. 28, 2005) (precluding plaintiff from asserting new damages theory):

> *Second, and most important, plaintiff's original Rule 26(a)*
> *disclosure (quoted above), did not assert any claim for currency*
> *conversion damages.* Rule 26(a)(1)(C) requires initial disclosure
> of "a computation of any category of damages claimed by the
> disclosing party. . . ." Nowhere does plaintiff's initial Rule 26(a)
> disclosure refer to currency conversion damages, much less make
> the calculation - which, on plaintiff's theory that it is as of the date
> of breach, could have been easily calculated at the time of the
> initial disclosure. **Plaintiff's amended disclosure, *just two weeks***
> ***before the close of discovery,* is not a reasonable amendment or**
> **update; it is simply too late.**

Id. (emphasis added).[5]  That is not an isolated case.[6]  Rather, since the adoption of Rule 37(c)(1),

"the required sanction in the ordinary case is mandatory preclusion."  Ortiz-Lopez v. Sociedad

---

[5] Virtual's attempt to distinguish this case is nonsensical.  The supposed "last minute" supplementation at issue in
Austrian Airlines was made two weeks before the close of fact discovery, earlier than Virtual's supplementation
here.  And while it is true that Virtual would have needed discovery to *calculate* damages on its new profits theory,
it needed no discovery to identify that theory as one it was pursuing. Virtual's attempt to distinguish the Oracle case
cited below is similarly misguided.  Couristan has already spent more than six figures on discovery in this action –
costs substantially increased by Virtual's counsel's various other discovery failures and "inefficiencies," as
discussed below – an outsized sum compared to the value of this action.  As in Oracle, it would be fundamentally
unfair to once again throw wide the gates of discovery at the moment they were to be slamming shut.

[6] See, e.g., Nicholas v. Penn. State. Univ., 227 F.3d 133, 148 (3d Cir. 2000) (Alito, J.) (affirming preclusion of
damages evidence where plaintiff failed to timely supplement his interrogatory responses); Design Strategy, Inc. v.
Davis, 469 F.3d 284, 295 (2d Cir. 2006) (affirming preclusion of "lost profits" damages testimony for failure to
include basis for claimed damages in initial disclosures); Roberts v. U.S., Civ. A. No. 09-6212, 2012 U.S. Dist.
Lexis 86762, *12-14 (D.N.J. June 22, 2012) (precluding evidence not disclosed as required, because reopening
discovery, delaying trial, and increasing expense to defendant, as would be required by late disclosure, would be
prejudicial); Gabriel v. Safeway, Inc., Civ. A. No. 10-2256, 2011 U.S. Dist. LEXIS 133831, *11 (D.N.J. Nov. 7,

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 21 of 28

Espanola de Auxilio Mutuo y Benefiencia de P.R., 248 F.3d 29, 34 (3d Cir. 2001) ("The new rule [37(c)(1)] clearly contemplates stricter adherence to discovery requirements and harsher sanctions for breaches of this rule ...") (alteration in original) quoting Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998).[7]

Rule 37(c)(1) also mandates preclusion where a party fails to seasonably supplement its interrogatory responses as required by Rule 26(e).[8] There is no dispute that Virtual waited months after belatedly deciding to seek profits damages, as fact discovery wound to a close, before supplementing its interrogatory responses.[9] Thus, Virtual can avoid preclusion only if its violations of its Rule 26(a) and 26(e) obligations was either substantially justified or harmless. It was neither.

---

2011) (precluding witness declaration as "mandatory sanction" for failure to identify witness' last known address in initial disclosures); Timothy & Thomas LLC v. Viral Genetics, Inc., 2010 U.S. Dist. LEXIS 81147, 53 (N.D. Ill. Aug. 10, 2010) ("A party may not change theories after discovery has closed"); Oracle USA, Inc. v. SAP AG, 264 F.R.D. 541, 544 (N.D. Cal. 2009) (precluding damages theory not disclosed in initial disclosures despite close of fact discovery being months away; "[f]undamental fairness as well as effective case management require that damages discovery not be dramatically expanded at this late date"); Roberts v. Ground Handling, Inc., 2007 U.S. Dist. LEXIS 69992, *11 (S.D.N.Y. Sept. 20, 2007) ("Specifically, plaintiff failed to disclose these damages in her Rule 26(a)(1)(C) initial disclosures. This is alone sufficient to preclude her from submitting evidence of it at trial"); Engers v. AT&T (In re Engers), No. 98-cv-3660, 2005 U.S. Dist. LEXIS 41682, 6 (D.N.J. Sept. 8, 2005) (precluding testimony from witness that should have been, but was not, disclosed in initial disclosures).

[7] Virtual's reliance on cases decided prior to the 1993 amendments of Rule 26(a) and Rule 37(c)(1), such as DeMarines and Coleco Industries, is thus significantly misplaced.

[8] See, e.g., Roberts, 2012 U.S. Dist. LEXIS 86762; Steele v. Aramark Corp., Civ. A. No. 09-4340, 2012 U.S. Dist. LEXIS 43429 (D.N.J. Mar. 29, 2012).

[9] As noted above, Virtual's expert advised it to seek profits damages in early May, fact discovery closed for all purposes other than a potential response to Interrogatory 8 and the redeposition of Mr. Sucher in early July, and Virtual sought to amend and supplement its responses only thereafter.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 22 of 28

        To its credit, Virtual does not pretend the delay was justified.  Instead, Virtual's counsel

acknowledges that it lacks the familiarity with copyright law necessary for this copyright

litigation, and asserts that counsel did not become aware such damages were available until

Virtual's damages expert educated them on or about May 3, 2012.  But that claim is contradicted

by several indisputable facts: Virtual's allegation in Paragraph 14 of the Complaint; the letter of

March 21 *of last year*, which specifically cited and explained the relevant sections of the

Copyright Act; and Mr. Catalina's subsequent discussion of that issue with Couristan's counsel –

all of which make clear Virtual's counsel had been so informed long before May 2012.  Even

setting those facts aside, however, counsel's unfamiliarity with copyright law would be no

justification.   Virtual selected its attorneys, and its counsel had both an ethical duty to

sufficiently educate themselves as to copyright law in advance of filing this action, and a duty

under Rule 26(a) to conduct a reasonable inquiry into the claims available to its client *prior* to

submitting Virtual's Initial Disclosures.[10]  Instead, Virtual delayed in retaining a damages expert

to educate its attorneys until more than a year into the litigation, and on the eve of what had

initially been scheduled as the close of fact discovery.   Those were Virtual's choices, and

Virtual, not Couristan, must bear their consequences.

        Virtual similarly offers no justification for its delay from the time it "learned" of its

potential entitlement to Couristan's profits as damages, in May 2012, to the time it finally

supplemented its Initial Disclosures (and interrogatory responses), in July 2012.   Asked to

---

[10] See AstraZeneca AB v. Mutual Pharm. Co., 278 F. Supp. 2d 491 (E.D.Pa. 2003) (noting, in precluding evidence, that the defendant had "delayed, without any legitimate excuse, its own investigation" of its newly asserted theory).

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 23 of 28

explain that delay, Virtual's counsel could only say "[b]ecause Frank [Catalina] is terribly inefficient" and "your [i.e. Couristan's counsel's] attention span is much closer than ours is."[11] Self-evidently, that is no justification.

Neither was Virtual's delay harmless. Couristan based its discovery process, litigation strategy, and settlement strategy on Virtual's disclosures, as it was entitled (and indeed expected) to do. Thus, Couristan did not collect or review documents relevant to its revenues and costs, and did not conduct third party discovery regarding the impact of the room scenes on customer purchase decisions. Couristan also spent significant time and money crafting settlement positions and strategizing about the progress of the litigation, obtaining discovery which would limit Virtual's best-case recovery to a mere $10,000. With a single belated disclosure, Virtual has magnified its potential recovery by at least 20 to 30 times – a change in Couristan's risks of litigation that would have required an entirely different approach.

Indeed, this very motion provides an example of the prejudice to Couristan. In Part B, infra, Couristan argues that Virtual's request is irrelevant because there is no nexus between the alleged infringement and Couristan's profits. Couristan cannot use evidence gathered in third-party discovery to support that argument, however – because Couristan, relying on Virtual's disclosures, did not conduct any. Instead, Couristan is left solely with the evidence of Mr.

---

[11] While Virtual's counsel now contends those statements were made "half in jest," see Exhibit C, that very argument acknowledges they were *at least* "half serious." Indeed, Virtual's counsel offered no other explanation for the delay – and no other explanation could conceivably be offered. Either Virtual's counsel was exactly as inept and inefficient as it claimed, or it made a deliberate decision to delay amending its disclosures until Couristan could do nothing with respect to them. We have no doubt that Virtual's counsel, who we have found to be extremely ethical, did not make any such deliberate decision.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 24 of 28

Mahurter's experience in and knowledge of the industry.[12]  Unless the Court rules for Couristan

on the basis of Mr. Mahurter's declaration, the lack of that additional supporting evidence, on a

critical motion to which it would be relevant, is itself a significant prejudice.

Moreover, were Virtual allowed to assert such a damages theory, fact discovery would

need to be reopened to allow Couristan to produce additional documents and to take third party

discovery (steps Couristan could have more efficiently taken had Virtual made timely

disclosures).  That process would take months and could cost Couristan six-figures in attorney's

fees – dramatically increasing the *in terrorem* value of Virtual's frivolous case – at a time when

Couristan is eagerly looking forward to proceeding with its summary judgment motion.

In sum, there is no question that Virtual's Initial Disclosures were deficient, no dispute

that the delay in amending them was unjustified, and no doubt that it was prejudicial.  As the

relevant cases make clear, preclusion is the appropriate remedy under Rules 26(a), 26(e), and

37(c)(1).

---

[12] Virtual takes issue with Mr. Mahurter's declaration because, it contends, Mr. Mahurter is purportedly incompetent to testify as to the business he has spent his career in, and because, Virtual complains, it did not receive a "final copy" of the declaration until midday on November 13.  As to the first complaint, Mr. Mahurter's long career in the carpet industry more than qualifies him to offer opinion testimony that is rationally based on his perceptions in his experience in that industry.  See F.R.E. 701(a) (2012).  See also United Linen Wholesale, L.L.C. v. Northwest Co., No. 2:06-cv-5934, 2010 U.S. Dist. LEXIS 95924, 4-5, 10-11 (D.N.J. Sept. 13, 2010) (denying motions to preclude lay opinion testimony).

With respect to the second complaint, it is a misdirection.  Couristan provided Virtual with Mr. Mahurter's declaration, as a courtesy, on the night of November 12.  Couristan later deleted a single sentence from that draft, and therefore provided Virtual with an updated version, specifically identifying the change; it is that updated version that Virtual received on the 13th.

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 25 of 28

**B.       The Alleged Infringement Lacks The Requisite Nexus To Couristan's Profits,
          And The Information Sought By Interrogatory No. 8 Is Thus Irrelevant**

The information sought by Virtual is also irrelevant, because the room scene images
Virtual provided are not sufficiently related to Couristan's profits.   Where a plaintiff seeks
indirect profits, "the burden is on Plaintiff in the first instance to establish the causal connection
between the [] profits, and the infringement." Motorvations Inc. v. M&M Inc., No. 2:99cv0824,
2001 U.S. Dist. LEXIS 18440, *15 (D. Utah July 6, 2001) (finding issues of fact existed as to
amount of revenues attributable to infringing advertising campaign).   "[A] copyright owner is
required to do more initially than toss up an undifferentiated gross revenue number; the revenue
stream must bear a legally significant relationship to the infringement." Polar Bear Productions,
Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004).   A plaintiff seeking such damages must
"put forward some evidence indicating that the revenues in question were, at least in part, caused
by the alleged infringement." Leonard v. Stemtech Health Scis., Inc., Civ. Action No. 08-067,
2011 U.S. Dist. LEXIS 139221, 64 (D. Del. Dec. 5, 2011).   When an infringer's profits are only
remotely and speculatively attributable to infringement, courts will deny recovery to the
copyright owner." 4 Nimmer On Copyright § 14.03, 14-34 (2012).   Here, not only does Virtual
have no such evidence to meet its burden (having conducted no discovery on that issue), but Mr.
Mahurter has attested, based on his knowledge of and experience in the industry, that the room
scenes have no impact on customer purchasing decisions or Couristan's profits.   Declaration of

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 26 of 28

Larry Mahurter, ¶¶ 6-14.[13]  As such, Virtual cannot recover Couristan's profits as damages, and the information called for by Interrogatory No. 8 is irrelevant.

**C.**     **The Court Should Award Couristan Its Costs As A Sanction**

In addition, the Court should exercise its power under Rule 37(c)(1) to sanction Virtual and its counsel the costs Couristan has incurred in responding to Virtual's belated attempt to alter its damages theory at this late stage, including the costs and fees attributable to this motion.[14] That is particularly true given Virtual's counsel's admissions that it "does not specialize in copyright litigation", is "terribly inefficient", and has not been paying sufficiently "close attention" to this action.

As the Court is aware, those problems have dramatically and needlessly increased Couristan's attorneys' fees and costs in this litigation at every stage of this action – from Virtual's assertion of a preempted breach of contract claim Couristan was forced to move to dismiss and Virtual later withdrew, with prejudice, as entirely meritless, to Virtual's repeated discovery failures that have required Couristan's counsel to spend time and money resolving, and even necessitated Court attention (such as its failure to provide timely responses, failure to collect electronic documents, failure to conduct privilege reviews, etc.).  A fuller detailing of Virtual's counsel's repeated and costly errors and defaults was submitted to the Court in

---

[13] Indeed, as Mr. Mahurter's declaration makes clear, Virtual's submission on this issue, which is entirely attorney argument, is not even correct as to such basic facts as where Couristan carpets are sold or even how retailers such as Home Depot or Lowe's typically display carpet for sale

[14] See Wachtel v. Health Net, Inc., 239 F.R.D. 81, 110 (D.N.J. 2006) (sanctions appropriate under Rule 37(c)(1) where "a party has failed to disclose information without substantial justification").

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 27 of 28

Couristan's letters October 11, 2011 and March 19, 2012, annexed hereto as Exhibits O and P, respectively.  With all due respect, it is time that Virtual, rather than Couristan, bear the costs of its selection of counsel who lack the requisite familiarity with copyright law and attention to detail necessary to efficiently litigate its claims.  Monetary sanctions are appropriate and necessary, and should be ordered.

Respectfully submitted,

Robert S. Weisbein

cc:  Robert Margulies, Esq. (via ECF)
     Frank Catalina, Esq (via ECF)
     Jay Lubetkin, Esq. (via ECF)

Magistrate Judge Michael A. Hammer
November 14, 2012
Page 28 of 28

## **<u>Exhibit List</u>**

Exhibit A:     Interrogatory No. 8

Exhibit B:     Letter to Frank Catalina Dated March 21, 2011

Exhibit C:     Virtual's Initial Disclosures

Exhibit D:     Virtual's Interrogatory Responses

Exhibit E:     E-mail from Robert Margulies dated July 27, 2012

Exhibit F:     Virtual Interrogatories Dated May 9, 2012

Exhibit G:     Couristan Interrogatory Responses Dated June 11, 2012

Exhibit H:     Virtual Letter to Court Dated June 20, 2012

Exhibit I:     Couristan Responsive Letter Dated June 21, 2012

Exhibit J:     Virtual Supplementation of Initial Disclosures, Dated July 19, 2012

Exhibit K:     Virtual Supplementation of Interrogatory Responses, Dated July 19, 2012

Exhibit L:     Letter to Counsel for Virtual Studios, Dated July 19, 2012

Exhibit M:     E-mail from Frank Catalina Dated July 24, 2012

Exhibit N:     E-mail from Robert Margulies Dated September 4, 2012

Exhibit O:     Couristan Letter to Court Dated October 11, 2011

Exhibit P:     Couristan Letter to Court Dated March 19, 2012